**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: APPLE AIRTAG STALKING          MDL No. 26-40
PERSONAL INJURY/PRODUCT
LIABILITY/MARKETING AND SALES
PRACTICES LITIGATION

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF
ACTIONS TO THE DISTRICT OF ARIZONA PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

This matter involves a growing number of civil actions brought against Apple Inc. ("Apple") by individuals who allege they were stalked, tracked, harassed, threatened, or otherwise physically harmed as a result of Apple's AirTag® product—a small Bluetooth-enabled tracking device released in April 2021 (hereinafter "AirTag"). The Complaints generally allege that Apple was negligent; failed to warn of the hazard created by its flawed product; that Apple designed, manufactured, marketed, and sold AirTags without adequate safeguards against misuse for stalking and domestic violence, despite pre-launch warnings from domestic violence advocates. Yet, Apple continued to sell, and profit from, the AirTag despite proliferating reports of AirTag enabled stalking after release and the availability of feasible alternative designs.

The actions listed on the Schedule of Actions (Ex. 1; Ex. 3[1] (copy of the complaint and docket sheet for each action listed on the Schedule)) share substantial common questions of fact, including: Apple's knowledge of stalking risks before and after launch; the adequacy of AirTag's anti-stalking safeguards; Apple's negligence and failure to warn; the feasibility of safer alternative designs; Apple's internal communications regarding safety measures; Apple's post-market

---

[1] The document containing copies of the complaints and docket sheets for each action listed on the Schedule contains over 1400 pages and will be hand-delivered to the Clerk of the Panel within one business day pursuant to Rule 3.2(d).

response; and the operation and limitations of Apple's Find My network and alert systems. Each Plaintiff's claims are grounded in a common factual matrix—Apple's alleged decisions concerning the design, launch, warnings, and post-market safety updates for the AirTag product.

The District of Arizona is the appropriate transferee forum because Judge Diane Humetewa has familiarity with the common factual issues at stake in this litigation from the action and former actions, *Jane Doe v. Apple, Inc.*, No. 2:26-cv-05261 (D. Ariz.) (J. Humetewa); *see also Jane Doe S.B. 1 v. Apple Inc.*, (D. Ariz.).[2]

## FACTUAL BACKGROUND

### I. Using AirTags to Track, Stalk, and Harm Victims

According to the allegations made by *Jane Doe D.C. 1*, Apple released the AirTag in April 2021.[3] The AirTag is approximately the size of a quarter, and its purpose is to transmit its location to its owner.[4] AirTags operate by emitting Bluetooth signals that are detected by the many millions of Apple devices participating in Apple's "Find My" network. Those devices report the AirTag's location information back to Apple's servers, which then relay that information to the AirTag's registered owner.[5]

The Complaints identified and attached in the Schedule of Actions (Ex. 1; Ex. 3 (copy of the complaint and docket sheet for each action listed on the Schedule)) further allege that Apple released the AirTag despite knowing the product could be purchased and used by abusive or dangerous individuals as a weapon to track, coerce, control, endanger, and abuse victims, and despite knowing that adequate safeguards had not been implemented at the time of launch. These

---

[2] At the time of filing the instant motion, a civil action number and judge have not yet been assigned to *Jane Doe S.B. 1*.
[3] *Jane Doe D.C. 1 v. Apple, Inc.*, No. 3:26-cv-01974-MMH-LLL (M.D. Fla.).
[4] *Jane Doe D.C. 1,* at ¶ 14.
[5] *Id.* at ¶ 16.

allegations likewise state that Apple acknowledged its safeguards would "deter as opposed to prevent malicious use."[6]

### II. Apple's Alleged Knowledge of Pre-Launch Warnings and Post-Launch Reports

The Complaints allege that domestic violence advocates and technologists warned Apple, soon after the AirTag's announcement, about the risk of misuse for stalking. These warnings included concerns raised by the National Network to End Domestic Violence ("NNEDV") and independent testing published by the Washington Post demonstrating that AirTags could be used to track individuals without their knowledge or consent.[7]

The Complaints allege that despite these warnings, Apple minimized risks through coordinated press efforts portraying AirTags as harmless or "stalker-proof." Shortly after release, reports of AirTags being used for stalking in multiple states multiplied, as the number of violent incidents stemming from AirTags rapidly increased. The Complaints allege that Apple received more than 40,000 stalking-related complaints from between 2021 and 2024—at times averaging more than 1,000 complaints per month.[8]

### III. Alleged Inadequacy of Safety Measures and Availability of Safer Alternatives

The Complaints further allege that Apple's post-launch remedies were grossly inadequate, including delayed iOS alerts that could take hours or days to notify victims of an unknown AirTag traveling with them, woefully insufficient protections for Android users who for more than two years had limited, if any, detection capabilities, and speaker sounds that were inaudible or easy to disable.[9] The Complaints allege that at all relevant times, alternative feasible designs were available, including faster alerts, improved Android protections, saved alerts, remote disabling

---

[6] *Id.* at ¶¶ 7, 58.
[7] *Id.* at ¶¶ 38-40.
[8] *Id.* at ¶¶ 9, 20, 57.
[9] *See e.g., id.* at ¶¶ 60-90.

capabilities, location muting, limits on moment-by-moment tracking, subscription or registration requirements, and tamper resistant speaker features.[10]

### IV. The Prior *Hughes* Class Action and Severance of Individual Claims

Many of the plaintiffs in these actions identified in the Schedule of Actions originally asserted claims as part of *Hughes v. Apple, Inc.*, No. 3:22-cv-07668-VC (N.D. Cal.). On March 9, 2026, Judge Chhabria denied the plaintiffs' motion for class certification. *See* Ex. 2, Order Denying Motion for Class Certification, *Hughes v. Apple, Inc.*, No. 3:22-cv-07668-VC (N.D. Cal. Mar. 9, 2026). Following the denial of class certification, approximately 34 plaintiffs' claims were severed from the original action, and more than a dozen plaintiffs filed individual lawsuits against Apple. At least 16 Plaintiffs, several using pseudonyms, filed individual actions on or about May 2, 2026. These actions are now pending, individually, in various federal courts throughout the United States.

### LEGAL STANDARD

Section 1407 of Title 28 authorizes the Panel to transfer civil actions involving one or more common questions of fact pending in different districts to any district for coordinated or consolidated pretrial proceedings when transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Joint Panel on Multidistrict Litigation ("The Panel") considers whether actions share sufficient common factual questions to warrant consolidation and, if so, selects an appropriate transferee district and judge. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491 (J.P.M.L. 1968).

The Panel has held that consolidation is appropriate where actions share common factual issues regarding a defendant's knowledge, conduct, and product design decisions, even where

---

[10] *See e.g.*, *id.* at ¶¶ 91-120.

individual plaintiffs raise varying claims or suffer different injuries. *See, e.g., In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383 (J.P.M.L. 2015); *In re Smith & Nephew BHR & R3 Hip Implant Prods. Liab. Litig.*, 249 F. Supp. 3d 1348 (J.P.M.L. 2017).

## ARGUMENT

These actions present the paradigmatic case for MDL treatment. Each action arises from the same factual nucleus—Apple's design, manufacture, marketing, and sale of AirTag, a single consumer product sold nationwide. The common factual questions include, but are not limited to:

(1) Apple's knowledge, before and after AirTag's launch, of the risk that AirTags would be used for stalking, domestic violence, and related criminal conduct;

(2) The adequacy of AirTag's anti-stalking and anti-tracking safeguards at launch and as updated thereafter;

(3) The design, functionality, and limitations of Apple's Find My network as it relates to AirTag tracking;

(4) The timing and adequacy of notifications to victims—both iOS and Android users—that an unknown AirTag was traveling with them;

(5) The feasibility of alternative, safer product designs that Apple allegedly failed to implement;

(6) Apple's internal communications, testing, and decision-making regarding AirTag safety features;

(7) Apple's post-launch marketing communications and alleged misrepresentations regarding the safety of AirTags;

(8) Apple's response to reports of AirTag-enabled stalking and the adequacy of its post-market corrective actions; and

(9) General causation issues concerning whether and how AirTag's design contributed to the stalking and injuries alleged.

These common factual questions will dominate discovery in each action. The core liability discovery—Apple's documents, corporate witnesses, engineering records, marketing

communications, and internal safety analyses—will be similar, if not, identical across all cases. Absent consolidation, Apple would face duplicative discovery requests in each action, parties and witnesses would be subjected to unnecessary burden and expense, and there is a risk of inconsistent pretrial rulings on common issues.

### I. Denial of Class Certification Underscores Appropriateness of MDL Consolidation

The Panel has repeatedly centralized actions that are not amenable to class treatment but share common liability questions requiring coordinated pretrial proceedings. Indeed, the denial of class certification in *Hughes* highlights precisely why MDL treatment is appropriate here. Judge Chhabria's rejection of class certification rested in part on individual issues of standing and damages—the very characteristics that make these actions suitable for mass tort treatment rather than class adjudication. Judge Chhabria is understood to have suggested at a hearing that the claims should have been pursued as a mass tort, comparing them to the Uber-driver-assault MDL, though that statement should be verified against the hearing transcript before filing.[11]

The Panel routinely consolidates product liability and personal injury actions where, as here, individual damages and causation issues exist alongside dominant common questions of design, knowledge, and corporate conduct. *See, e.g., In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396 (J.P.M.L. 2023); *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019). The individual nature of plaintiffs' damages reinforces that consolidate pretrial proceedings—rather than class treatment—is the appropriate mechanism to manage overlapping liability discovery while preserving individual damages presentations.

---

[11] *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396 (J.P.M.L. 2023) (centralizing individual sexual assault claims against a ridesharing platform where common questions of corporate knowledge, safety measures, and platform design predominated despite individual damages).

**II. Consolidation Will Serve the Convenience of Parties and Witnesses and Promote Efficiency**

Consolidation will eliminate duplicative discovery, prevent inconsistent rulings, and reduce the burden on Apple, which would otherwise face parallel litigation in multiple courts. Apple is presently the sole defendant in all listed actions and will be required to produce substantially the same corporate documents, engineering records, and witnesses in each case. Consolidating pretrial proceedings in a single forum will conserve judicial resources, reduce costs for all parties, and facilitate the orderly development of a shared evidentiary record on liability issues common to all cases.

Moreover, consolidation is particularly warranted given the anticipated volume of litigation. Approximately 34 plaintiffs' claims were severed from the *Hughes* action following the denial of class certification and more than 20 individual actions are now pending in at least 17 jurisdictions. Additional tag-along actions are anticipated as awareness of these claims grows.

**III. The District of Arizona Is the Appropriate Transferee Forum**

The District of Arizona is a logical and efficient transferee forum because at the time of filing this motion, two AirTag cases are pending in the District of Arizona. *Jane Doe S.B. 1 v. Apple Inc.*, (D. Ariz.); *Jane Doe v. Apple Inc.*, No. 2:26-cv-05261 (D. Ariz.). Judge Diane Humetewa has familiarity with the common factual issues from presiding over the related actions. *Jane Doe v. Apple Inc.*, No. 2:26-cv-05261 (D. Ariz.). Judge Humetewa's existing knowledge of the parties, the product, and the legal issues raised by AirTag enabled stalking will allow these proceedings to advance expeditiously without the delay inherent in a new judge familiarizing himself or herself with the background of this litigation.

Although Judge Humetewa has not previously presided over a multidistrict proceeding, prior MDL experience is not a prerequisite to selection as a transferee judge. The Panel's selection

turns principally on the transferee judge's capability, temperament, and the resources available to manage complex litigation—not on the length of the judge's tenure with similar dockets. *See In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010) (assigning the MDL based on the transferee judge's access to district resources, including magistrate judges and an experienced clerk's office, rather than tenure alone). Indeed, where circumstances warrant, the Panel has looked beyond the judges most obviously connected to a docket and selected jurists based on their ability and temperament to manage the litigation fairly. *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098 (J.P.M.L. 1992).

As of March 2026, the District Court of Arizona has 7,045 open cases. This is a stark contrast to other federal districts, including, for instance, the Northern District of California,[12] which has 16,393 open cases—over two times as many open cases and multiple large MDLs.[13] With the disparity in the number of open cases, the District Court for Arizona is a better forum for efficiency purposes. The Panel has likewise recognized its flexibility to appoint or substitute transferee judges as the size and complexity of a docket may require. *See In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. 415 (J.P.M.L. 1991).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer the actions listed on the attached Schedule of Actions, and any tag-along actions subsequently filed, to the District of Arizona for coordinated or consolidated pretrial proceedings before Judge Diane Humetewa.

---

[12] At the time of filing the instant motion, there are no related Apple AirTag cases pending in the Northern District of California.

[13] *Civil Federal Judicial Caseload Statistics*, UNITED STATES DISTRICT COURTS tbl.C-1 (March 31, 2026), https://www.uscourts.gov/data-news/data-tables/2026/03/31/federal-judicial-caseload-statistics/c-1.

Dated: August 4, 2026

Respectfully submitted,

/s/ *Lee A. Floyd*
Lee A. Floyd
**FLOYD LAW**
626 East Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 529-0000
Fax: (804) 529-0009
lee@floydpc.com
*Counsel for Plaintiffs JANE DOE*
*S.B. 1; JANE DOE D.C. 1;* and
*JANE DOE N.G.1*

D. Todd Mathews
**BAILEY & GLASSER, LLP**
210 West Division Street
Maryville, Illinois 62062
Phone: (618) 726-0091
Fax: (314) 863-5482
tmathews@baileyglasser.com
*Counsel for Plaintiffs JANE DOE*
*D.C. 1 and JANE DOE N.G. 1*