**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **In re: Apple AirTag Stalking Personal Injury, Product Liability, Marketing and Sales Practices Litigation** | ) ) ) ) | **MDL No. 3199** |

***Joinder* by Plaintiff Jane Doe S.B. 1 from the District of Arizona in Amended Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407**

Pursuant to Rule of Procedure of the United States Judicial Panel on Multidistrict Litigation ("JPML") 6.1(c), and in accordance with the JPML's expedited briefing schedule, Plaintiff Jane Doe S.B. 1 from the District of Arizona joins the moving Plaintiffs[1] in their Amended Motion for Transfer of Actions to the District of Arizona ("Motion")[2] (ECF No. 2 and 2–1) and addresses points raised in Defendant Apple Inc.'s ("Apple") Memorandum of Law in Opposition to the Motion for Transfer ("Opposition") (ECF No. 23).

## INTRODUCTION

On August 3, 2026, Plaintiff Jane Doe S.B. 1 filed suit in the District of Arizona, Case No. 2:26-cv-05421-SPL. Like the moving Plaintiffs, Plaintiff Jane Doe S.B. 1 brings claims of negligence, product liability, and state law consumer protection based on Apple's AirTag product and the foreseeable use of AirTags for stalking. Additional cases have been filed in district courts around the country, all arising out of stalking facilitated by Apple AirTags. Transfer and consolidation are appropriate for the following reasons and are the only means to

---

[1] The moving Plaintiffs are Jane Doe S.D. 1, Jane Doe D.C. 1 and Jane Doe N.G. 1.

[2] The Amended Motion was filed on August 10, 2026. Although the JPML Rules dictate that joinders shall be filed within 21 days of the Motion to Transfer, out of an abundance of caution and in accordance with the expedited briefing schedule entered by the Panel, Plaintiff files the instant, timely joinder to Plaintiffs Jane Doe S.D. 1, Jane Doe D.C. 1 and Jane Doe N.G. 1's Amended Motion.

reasonably and efficiently manage common fact questions for nationwide product liability claims arising from stalking by use of AirTags.

## ARGUMENT

*I. Transfer is Appropriate.*

In deciding whether to transfer a case, the "Panel must make an affirmative determination that the transfer 'will be for the convenience of parties and witnesses and will promote the just and efficient conduct' of that action." *In re Libr. Editions of Children's Books,* 299 F. Supp. 1139, 1141–43 (J.P.M.L. 1969) (the objective of the legislation is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the 'just and efficient conduct' of such actions. (citing H.R. Rep. No. 1130, 90th Cong., 2d Sess. 3 (1968), U.S. Code Cong. & Admin. News 1968, p. 1899.)).

Here, there are several common questions of fact, including the knowledge (and records) of Apple's key AirTag employees pertaining whether it was foreseeable that AirTags would be used to harass and stalk victims; what considerations were reviewed by Apple for anti-stalking and anti-tracking protections and which were implemented; the configuration of Apple's "Find My" network and how it was considered with respect to how the AirTags would be used to track and stalk; what warnings were considered and implemented (and when) to notify victims that AirTags not belonging to the victim were being used to track and stalk the victim, both for Apple and Android devices; the consideration of alternative warning systems, speakers, notification programs, and considered protections; Apple's representations regarding the safety of the AirTags and whether those representations were untrue; and what uses and alterations to AirTags if any have been commonly used and whether they were foreseeable.

Apple will defend against these product liability claims, writ large, based on strikingly similar state statutes that modify and define product liability law. *Compare* A.R.S. § 12-683(2) *with* Mich. Comp. Laws § 600.2947(1) *and* N.C. Gen. Stat. § 99B-3. Beyond common factual evidence for prosecution of Plaintiffs' claims, all or any one of these categories of factual defenses and the documentary and testimonial support for them will turn on common, necessary, and overlapping evidence.

Transfer thus serves several purposes: it eliminates duplicative discovery, avoids conflicting pretrial rulings and schedules, reduces costs for litigants, and saves the time and effort resources of parties, counsel, witnesses, and perhaps most critically the court. *In re: Plumbing Fixture Cases*, 298 F. Supp 484 (J.P.M.L. 1968). Transfer here, in other words, would accomplish the main point of coordination: to promote the just and efficient conduct of the litigation. *Id. See also,* Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21.

*II. The District of Arizona is The Most Appropriate Forum.*

Once the Panel has decided that transfer is appropriate, it must decide on a transferee forum. Factors to determine the most appropriate forum include: (1) the location of parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931–32 (J.P.M.L. 1980); *see also* Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21. These factors and considerations weigh in favor of transfer to the District of Arizona.

First, the District of Arizona – located in Phoenix, Arizona – is an accessible and geographically convenient forum for parties, witnesses, and documents in what is likely to be nationwide litigation. Notably, it is both geographically convenient and accessible for Apple,

which is headquartered in Cupertino, California. Second, the District of Arizona maintains a reasonable case load with capacity to accommodate a large MDL; as of March 31, 2026, the District had approximately 7,045 pending civil cases among 27 sitting judges, including 14 on senior status.[3] There is currently only one MDL pending in the District of Arizona: *In re: Bard Implanted Port Catheter Products Liability Litigation*, MDL 3081.[4] The burdens of an MDL would not unreasonably tax the resources of the District.

In sum, transfer of these actions to Arizona will accomplish the objectives of transfer by providing a court that can fairly handle the proceeding, thus ensuring convenience of parties and witnesses, and promoting the just and efficient conduct of the actions. *In re Libr. Editions of Children's Books,* 299 F. Supp. 1139, 1142–43 (J.P.M.L. 1969); 28 U.S.C. § 1407(a). Plaintiff Jane Doe S.B. 1 respectfully requests that the Panel transfer all related or tag-along actions to the United States District Court for the District of Arizona, for coordinated or consolidated pretrial proceedings.

*III. Apple's Opposition Concedes That Common Factual Issues Exist Across These Cases*

Although Apple attempts to style its Opposition as a rejection of consolidation, Apple in fact concedes the facts that compel transfer. Apple expressly acknowledges that "these cases have some factual matters in common." (ECF No. 23, p. 8). Apple further concedes that "questions about the AirTag's design and marketing are common across the cases." (ECF No. 23, p. 13). This

---

[3] Civil Federal Judicial Caseload Statistics, UNITED STATES DISTRICT COURTS tbl.C-1 (March31, 2026), https://www.uscourts.gov/data-news/data-tables/2026/03/31/federal-judicial-caseload-statistics/c-1.

[4] *List of Pending MDL Dockets by District*, published by the JPML, for August 2026 (available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-3-2026.pdf) (last accessed Aug. 10, 2026).

admission alone satisfies the statutory threshold for transfer under 28 U.S.C. § 1407, which requires only "one or more common questions of fact."

The common factual questions, as identified in an earlier section, are not peripheral. They form the core of every plaintiff's product liability and negligence claims. Critically, these common questions all relate to a single defendant (Apple) and to a single product (the AirTag) whose intended purpose of tracking personal belongings was foreseeably susceptible to use as a stalking tool. The common factual inquiry centers on Apple's design decisions, Apple's knowledge of the risk of stalking use, Apple's failure to implement sufficient security measures to prevent foreseeable harm to victims, and Apple's knowledge of the insufficiency of its security measures. These are not ancillary matters; they are the central factual predicates for all plaintiffs' claims against Apple. Apple concedes that the "questions about the AirTag's design and marketing" are common across the cases, and these are precisely the issues plaintiffs have identified as warranting centralized pretrial management.

*IV. Apple's Proposed "Informal Coordination" Confirms That Common Discovery Is Extensive and Ongoing.*

Apple's lengthy discussion of proposed informal coordination mechanisms is the most telling concession in the Opposition. These proposed mechanisms are precisely the types of coordination that an MDL transferee court is empowered to manage. Apple essentially asks this Panel to trust a single defendant to unilaterally manage the pretrial proceedings across dozens of cases—a function that 28 U.S.C. § 1407 assigns to the judiciary.

A. Document Repositories. Apple states it is "amenable to permitting the two main plaintiffs' counsel to maintain repositories of all documents produced in their cases that can be used in any of their other cases." (ECF No. 23, p. 19). If discovery were truly "case-specific" as Apple contends, there would be no need for shared repositories.

B. Cross-Noticed Depositions of Apple Witnesses. Apple concedes the parties can "cross-notice depositions so that Apple-affiliated witnesses are deposed only once." (ECF No. 23, p. 20). The fact that Apple's corporate witnesses need be deposed "only once" is an admission that their testimony is common to all cases.

C. Coordinated Expert Discovery. Apple admits it "will cooperate with plaintiffs to produce coordinated reports and allow for efficient expert depositions, including by permitting plaintiffs' counsel to share time deposing any Apple expert(s) who address common issues." *Id.* The existence of common expert issues requiring coordinated depositions also demonstrates the need for a single transferee court to manage these proceedings.

D. Shared Discovery Responses and Privilege Logs. Apple concedes that "discovery responses and privilege logs can be used across the cases." (ECF No. 23, p. 19). This admission that discovery in one case is directly relevant and usable in all other cases demonstrates the overlap that § 1407 is designed to address.

E. Corporate Representative Depositions. Apple acknowledges it "has not yet made available corporate representatives" but states "it can do so for cross-noticed depositions." (ECF No. 23, p. 22). The need for Apple corporate witnesses to testify across all cases confirms the commonality of the factual issues these witnesses will address.

*V. Apple's Reliance on "Case-Specific" Issues Does Not Overcome the Threshold for Centralization.*

Apple devotes much of its Opposition to cataloguing case-specific issues such as causation, third-party conduct, and damages. Apple ignores the fact that the claims in the cases for product liability and negligence are all based on the same facts as stated above. Also, the Panel has not required that common issues predominate—only that transfer will promote the just and efficient conduct of the actions. As Apple itself acknowledges, "unlike most class actions, centralization

under Section 1407 does not require predominance of common issues." (ECF No. 23, p. 16). Apple's attempt to then argue that the absence of predominance "affirmatively supports" denial of transfer is a confusion of the standard. The question is efficiency and convenience, and Apple's own coordinated-discovery proposals prove that centralized management would deliver both.

Moreover, the existence of case-specific causation is a feature of virtually every MDL. That individual plaintiffs experienced AirTag stalking in different ways does not eliminate the common core: Apple designed, manufactured, and marketed AirTag—a product whose stated purpose is to track the location of personal belongings—with knowledge of the foreseeable risk that it would be weaponized as a stalking tool, failed to implement adequate security measures to prevent such misuse, and still failed to adapt its security measures to prevent the harm that the AirTag did or could enable. The "case-specific" issues Apple identifies—which third party used the AirTag, how it was concealed, and what damages resulted—are downstream consequences of Apple's common failure to adequately safeguard its product against foreseeable misuse.

*VI. Apple's Prior Admissions Regarding the Scope of Common Discovery Confirm Consolidation Is Warranted.*

Apple attempts to diminish the significance of remaining common discovery by emphasizing that "significant common discovery" has already occurred in the Preexisting Cases, including production of "over 285,000 pages of documents." (ECF No. 23, p. 11). But this admission cuts both ways. The volume of common discovery produced confirms that these cases share a substantial factual core. And Apple concedes that critical common discovery remains outstanding—including depositions of Apple corporate representatives and expert discovery on common design and marketing issues.

Furthermore, Apple acknowledges that its discovery "can be used in any of [plaintiffs'] other cases." (ECF No. 23, p. 19). Apple thus recognizes that pretrial proceedings in one case

produce work product directly relevant to all others—which demonstrates that these cases are suitable for MDL transfer.

*VII. The Similarity of State Law Frameworks Supports Rather Than Defeats Consolidation.*

Apple argues that the application of different state laws weighs against centralization. But Apple's own description of these legal frameworks confirms their similarity. Apple identifies common legal concepts applicable across all cases—including "duty," "foreseeability," and "proximate cause"—and common categories of statutory defenses involving alteration, warnings, and comparative fault. As briefly mentioned above and by other plaintiffs, the product liability statutes across the relevant states involve strikingly similar frameworks: alteration defenses (Michigan, Arizona, North Carolina), inadequate warnings (New Jersey, Washington, Colorado), and comparative fault (California, Florida, Georgia, Nevada, New York). These parallel statutory structures confirm that a single transferee court can efficiently manage pretrial proceedings across all cases.

*VIII. Apple's Settlement Arguments Do Not Counsel Against Centralization.*

Apple contends that centralization would disrupt settlement progress, noting that "20 actions" have settled "in the last two months." But this argument proves too much. If Apple is settling cases at pace, centralization will only facilitate more efficient global resolution under judicial supervision. Moreover, the Panel routinely consolidates cases notwithstanding ongoing settlement discussions—indeed, MDL proceedings frequently accelerate resolution. Apple's argument also ignores that about half the cases remain unresolved, and new cases continue to be filed.

## CONCLUSION

For the foregoing reasons, the Plaintiff Jane Doe S.B. 1 respectfully requests that the Panel grant the Motion and transfer all related actions to the District of Arizona for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: August 28, 2026

Respectfully Submitted,

By: /s/ *Abigael McGuire*

Abigael R. McGuire (#040515)
**THE MEADOW LAW FIRM LLC**
2375 E Camelback Rd., Suite 380
Phoenix, Arizona 85016
Phone: (480) 790-9206
Fax: (480) 930-4482
amcguire@meadowlawfirm.com
*Attorney for Plaintiff Jane Doe S.B. 1*