**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE: APPLE AIRTAG STALKING PERSONAL INJURY/PRODUCT LIABILITY/MARKETING AND SALES PRACTICES LITIGATION**

**MDL No. 3199**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF ARIZONA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## INTRODUCTION

Apple Inc. ("Apple")'s opposition to consolidation mischaracterizes the nature of these cases and the substantial common discovery that remains. Although styled as a rejection of consolidation, the opposition concedes the facts that compel transfer: Apple admits common factual issues exist, acknowledges substantial common discovery, and proposes informal coordination mechanisms that themselves confirm the need for centralized judicial management. Apple asks this Panel to ignore the fundamental reality that every action in this litigation arises from a single product—the AirTag—designed, manufactured, marketed, and sold by a single defendant, Apple. Each plaintiff alleges the same core defects: that Apple knew its product would be used as a stalking weapon, failed to implement adequate safety features, and continued to profit while reports of AirTag-enabled violence mounted.

Apple's own litigation conduct underscores the need for centralization. After class certification was denied in *Hughes v. Apple Inc.*, No. 3:22-cv-07668-VC (N.D. Cal. Mar. 9, 2026), Apple moved under 28 U.S.C. § 1404 to transfer each severed plaintiff's case to a different district—specifically to scatter these cases across the country and avoid consolidated proceedings.

Apple now uses the resulting decentralization it engineered as an argument against MDL treatment. The Panel should not reward this gamesmanship.

The real question before this Panel is whether coordinated pretrial proceedings will serve the convenience of the parties and witnesses and promote the just and efficient conduct of these actions. 28 U.S.C. § 1407(a). The answer is unequivocally yes. Twenty-six or more cases are pending across 13 or more federal districts, with new cases filing regularly. Plaintiffs' counsel also currently have over 200 more cases to file across the country involving the same core claims and factual issues regarding Apple's AirTags. This number is expected to greatly increase over the next several months. Apple has yet to produce corporate witnesses for deposition. Common expert discovery on design defects has not occurred. Centralization will eliminate duplicative discovery, prevent inconsistent rulings, and conserve judicial resources.

## ARGUMENT

### I. COMMON QUESTIONS OF FACT PREDOMINATE OVER CASE-SPECIFIC ISSUES

Apple's primary argument—that "most of the remaining discovery will be case-specific"—fundamentally misstates the legal standard. Section 1407 does not require that common issues predominate; it requires only "one or more common questions of fact." 28 U.S.C. § 1407(a). *See In re Tyson Foods, Inc., FLSA Litig.*, 502 F. Supp. 2d 1358, 1360 (J.P.M.L. 2007) ("Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."). Apple's own opposition confirms that common issues meet that standard. Apple expressly concedes that "these cases have some factual matters in common" (ECF No. 23, p. 8) and that "questions about the AirTag's design and marketing are common across the cases" (ECF No. 23, p. 13). This admission alone satisfies the statutory threshold for transfer under 28 U.S.C. § 1407(a).

The common factual questions here are extensive: Apple's pre-launch knowledge of stalking risks from domestic violence advocates; the adequacy of AirTag's anti-stalking safety features at launch and as updated; Apple's internal design decisions and communications regarding safety measures; Apple's post-market response to over 40,000 stalking-related complaints; the operation and limitations of the Find My network; what warnings Apple provided (and when) to notify victims; and what alterations to AirTags were foreseeable. These questions form the factual core of every plaintiff's case.

Apple's assertion that "most of the remaining discovery will be case-specific" conveniently ignores the substantial common discovery that remains incomplete. (ECF No. 23, p. 13). Apple has produced over 285,000 pages of documents, yet it has not produced a single corporate witness for deposition on topics including design decisions, knowledge of stalking risks, and the adequacy of safety measures. Common expert discovery on design defects—central to every case—has not commenced. The depositions of Apple's engineers, product managers, and safety team members will be identical across all cases. Without centralization, each of the thirteen-plus courts would independently schedule and manage this overlapping discovery. Additionally, it is hard to fathom that a product that spent years in research and development, then went through a massive market launch and has now been on the market for more than five (5) years, would have less than 300,000 pages of documents relevant to this litigation.

The Panel routinely centralizes product liability cases despite the existence of individualized causation and damages issues. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 410 F. Supp. 3d 1357, 1358 (J.P.M.L. 2019) (centralizing where "actions share[d] factual issues arising from allegations that airbag control units manufactured by [defendant] [were] defective" and noting centralization "would eliminate duplicative discovery and other pretrial

proceedings”). *See also In re Future Motion, Inc. Prods. Liab. Litig.*, 709 F. Supp. 3d 1394, 1396 (J.P.M.L. 2023) (rejecting argument that “unique factual circumstances of each [product] incident [are] likely to overwhelm the common factual questions regarding the design and manufacture of the [product].”).

Apple’s reliance on *In re Cymbalta Prods. Liab. Litig.*, 65 F. Supp. 3d 1393 (J.P.M.L. 2014), is misplaced. In *Cymbalta*, the Panel denied centralization where substantial common discovery had already been completed and only two law firms represented all plaintiffs—making informal coordination practicable. *Id.* at 1394–95. Here, by contrast, common discovery remains materially incomplete—Apple has yet to produce corporate witnesses for deposition on the central liability questions—and the litigation is growing, with new cases filing regularly across multiple districts. The conditions that made informal coordination viable in *Cymbalta* simply do not exist here.

## II. INFORMAL COORDINATION IS INADEQUATE

Apple’s promise that informal coordination can achieve the benefits of centralization is belied by its own conduct. It was Apple that moved to transfer the Preexisting Cases to different districts under § 1404—specifically to scatter them across the country and prevent any form of coordinated proceedings. Having engineered decentralization, Apple now promises the very coordination it actively undermined. A defendant that engineered decentralization should not be heard to complain that centralization is now inconvenient.

The Panel has consistently rejected informal coordination as an alternative where, as here, the number of actions, districts, and counsel make it impracticable. *In re Uber Techs., Inc.*, 304 F. Supp. 3d 1351, 1354 (J.P.M.L. 2018) (“[T]he number of actions, districts, and involved counsel, and the complexity of the litigation, make effective coordination on an informal basis

impracticable."). Here, 26 or more cases are pending across more than 13 federal districts, before different judges with different scheduling orders, involving multiple plaintiffs' firms. Informal coordination cannot achieve consistent rulings on dispositive motions, Daubert challenges, or discovery disputes under these circumstances.

Apple's own proposed mechanisms confirm the opposite. Apple is "amenable to permitting the two main plaintiffs' counsel to maintain repositories of all documents produced in their cases that can be used in any of their other cases." (ECF No. 23, p. 19). If discovery were truly "case-specific," shared repositories would be unnecessary. Apple also concedes that parties can "cross-notice depositions so that Apple-affiliated witnesses are deposed only once." (ECF No. 23, p. 20). The fact that Apple's corporate witnesses need be deposed "only once" is an admission that their testimony is common to all cases.

Apple further admits it "will cooperate with plaintiffs to produce coordinated reports and allow for efficient expert depositions." (*Id.*). Apple concedes that "discovery responses and privilege logs can be used across the cases." (ECF No. 23, p. 19). Apple also acknowledges it "has not yet made available corporate representatives" but "can do so for cross-noticed depositions." (ECF No. 23, p. 22).

These are not mere accommodations; they are concessions that the cases share common fact and expert discovery. Apple essentially asks the Panel to trust a single defendant to unilaterally manage pretrial proceedings across dozens of cases—a function that 28 U.S.C. § 1407 assigns to the judiciary.

Apple's assertion that it "would support centralizing if it were efficient" rings hollow in light of its consistent efforts to frustrate consolidation. (ECF No. 23, p. 9). Apple filed its opposition within three weeks of the motion—yet argues that Movants should have first attempted

informal coordination. This contradiction reveals Apple's true position: it opposes any form of coordination, formal or informal, because scattering these cases serves its litigation strategy of attrition.

The Panel recognized in *In re Future Motion* that "informal cooperation and coordination among the involved parties and courts would be difficult" where nearly 40 actions were pending in 17 districts. 709 F. Supp. 3d at 1396. The same is true here, where the breadth of the litigation—26 cases across 13 districts and growing—makes informal coordination impracticable as a matter of logistics alone.

## III. DIFFERING PROCEDURAL POSTURES DO NOT PRECLUDE C ENTRALIZATION

Apple's argument that the varying procedural postures of the pending cases warrant denial is unavailing. The Panel has repeatedly held that varying procedural postures are common in MDL proceedings and do not preclude centralization. *See In re TR Labs Patent Litig.*, 896 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012) (noting that "actions transferred to an MDL are [frequently] in somewhat varying procedural postures" and that "the transferee judge possesses broad discretion to formulate a pretrial program that accounts for any significant differences among the [transferred] actions").

Similarly, in *In re Tyson Foods, Inc.*, the Panel held that where some actions "have more litigation history than the other actions," "nothing in the nature of Section 1407 centralization will impede the transferee court, whenever it deems appropriate, from recommending Section 1407 remand." 502 F. Supp. 2d at 1360. That one case—*O'Neill v. Apple*, C.D. Cal.—has a trial date of May 11, 2027, does not preclude centralization. The transferee court has full discretion to remand cases that are trial-ready or to structure the pretrial program to account for their advanced posture.

Moreover, Apple itself is responsible for the differing procedural postures it now cites as an obstacle to centralization. Apple actively litigated transfer motions under § 1404 to scatter these cases across the country, resulting in cases at different stages in different courts. Apple should not be permitted to benefit from the procedural chaos it created.

Far from being prejudiced by centralization, all cases—including those in more advanced stages—would benefit from a single transferee judge who can set bellwether trials, manage common expert discovery, ensure consistent rulings on Daubert motions and dispositive issues, and advance all cases toward resolution in an orderly fashion.

## IV. SIMILAR STATE LAW FRAMEWORKS SUPPORT RATHER THAN DEFEAT CENTRALIZATION

Apple argues that the application of different state laws weighs against centralization. But Apple's own description of these legal frameworks confirms their similarity. Apple identifies common legal concepts applicable across all cases—including "duty," "foreseeability," and "proximate cause"—and common categories of statutory defenses involving alteration, warnings, and comparative fault.

The product liability statutes across the relevant states likewise involve strikingly similar frameworks: alteration defenses in Michigan, Arizona, and North Carolina; inadequate-warnings provisions in New Jersey, Washington, and Colorado; and comparative-fault provisions in California, Florida, Georgia, Nevada, and New York. These parallel statutory structures confirm that a single transferee court can efficiently manage pretrial proceedings across all cases.

## V. APPLE'S SETTLEMENT ARGUMENTS DO NOT COUNSEL AGAINST CENTRALIZATION

Apple contends that centralization would disrupt settlement progress, noting that "20 actions" have settled "in the last two months." (ECF No. 23, p. 13). But this argument proves too

much. If Apple is settling cases at that pace, centralization will facilitate more efficient global resolution under judicial supervision.

The Panel routinely consolidates cases notwithstanding ongoing settlement discussions; indeed, MDL proceedings frequently accelerate resolution. Apple's argument also ignores that about half the cases remain unresolved and that new cases continue to be filed.

## VI. THE DISTRICT OF ARIZONA REMAINS THE APPROPRIATE TRANSFEREE FORUM

While Apple advocates for the Middle District of Florida, the District of Arizona remains the appropriate transferee forum. As the Northern District of California would seem an appropriate forum for this litigation, the fact that there are currently 19 active MDLs pending in the Northern District, with three more requests being made for the Northern District on the September hearing schedule, the District of Arizona provides a reasonable location. The District of Arizona provides a geographically close location to Apple's headquarters, located in Cupertino, CA, where most of the relevant corporate witnesses are located. Additionally, the District of Arizona sits in the same time zone as the Defendant, allowing for harmonization of hearings and depositions. Unlike the Middle District of Florida, which sits three hours ahead of Defendant's headquarters, the amount of time spent shuttling from coast to coast for hearings would be better spent on the actual work-up of the case. Rather than taking counsel three (3) days to travel to the east coast for a hearing, counsel could travel to the District of Arizona and back on the same day for hearings, thereby providing two (2) additional days for depositions of corporate custodians. The District of Arizona also sits in the same Federal Circuit as the Northern District of California, such that the decisions already made in the now defunct class action litigation could be consistently applied in another District Court in the same Circuit.

Apple's criticism of Judge Humetewa's familiarity with the litigation is overstated; at the time of filing, one AirTag case was pending before her. More importantly, the Panel selects transferee judges based on capability, temperament, and the resources available to manage complex litigation—not familiarity alone. *See In re Oil Spill by the Oil Rig "DeepWater Horizon"*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010). The District of Arizona has a significantly lighter caseload than other proposed forums and is well-positioned to manage this complex, growing litigation efficiently.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel grant the Motion and transfer all related actions to the District of Arizona for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: August 28, 2026

Respectfully submitted,

*<u>/s/ Lee A. Floyd</u>*
Lee A. Floyd
**FLOYD LAW**
626 East Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 529-0000
Fax: (804) 529-0009
lee@floydpc.com
*Counsel for Plaintiffs, JANE DOE M.S. 1, JANE DOE H.P.1*

*<u>/s/ D. Todd Mathews</u>*
D. Todd Mathews
**BAILEY & GLASSER, LLP**
210 West Division Street
Maryville, Illinois 62062

Phone: (618) 726-0091
Fax: (314) 863-5482
tmathews@baileyglasser.com
*Counsel for Plaintifs JANE DOE D.C. 1, JANE DOE K.L. 1, JANE DOE M.P. 1 and JANE DOE N.G. 1*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all Parties with an electronic mailing address of record, who have appeared and consented to electronic service in this action.

/s/ *Lee A. Floyd*
Lee A. Floyd