**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: APPLE AIRTAG MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** MDL No. 3199

**TRANSFER ORDER**

**Before the Panel:*** Plaintiffs in the District of Arizona *Doe S.B. 1*, Middle District of Florida *Doe D.C. 1*, and Southern District New York *Doe N.G. 1* actions listed on Schedule A move under 28 U.S.C. § 1407 to centralize this litigation in the District of Arizona. This litigation consists of seventeen actions pending in thirteen districts, as listed on Schedule A.[1] Since the filing of this motion, the parties have notified the Panel of twelve related actions pending in ten districts.[2]

Plaintiff in the Eastern District of Michigan *Doe-1* action listed on Schedule A supports the motion. Plaintiffs in another thirteen actions and two potential tag-along actions support centralization but ask the Panel to transfer the actions to the Northern District of California. Defendant Apple, Inc. (Apple), opposes centralization. Apple argues in the alternative that we should transfer the litigation to the Middle District of Florida.

On the basis of the papers filed and the hearing session held, we find that the actions listed on Schedule A involve common questions of fact and that centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. These actions share questions of fact arising from allegations that Apple released its AirTag product with inadequate safety features that would prevent it from being misused for stalking. Each plaintiff alleges that someone—often a perpetrator of domestic violence—hid one or more AirTags in their personal belonging, car, or the personal belonging of their child. Each plaintiff alleges that the AirTag's inadequate safety features allowed their stalker to surreptitiously track their whereabouts. Common questions of fact will include what Apple knew when it released the AirTag about the risk its product was likely to be used for criminal conduct, whether Apple included adequate safeguards to prevent the AirTag from being used for

---

* Judge M. Casey Rodgers took no part in the decision of this matter.

[1] The motion for centralization initially included 26 actions, but nine actions were dismissed during the pendency of the motion.

[2] These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(i), 7.1, and 7.2.

stalking, whether alternative designs were safer and feasible, and the scope of Apple's response to reports that stalkers were using the AirTag to track victims. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

In opposing centralization, Apple principally argues that centralization will not promote the just and efficient conduct of litigation because case-specific factual questions will overwhelm the common ones. It likens this litigation to *In re The Church of Jesus Christ of Latter-Day Saints Sexual Abuse Litigation*, 776 F. Supp. 3d 1356, 1358 (J.P.M.L. 2025), where we declined to centralize 41 actions involving allegations of sexual abuse by individuals associated with the Church of Jesus Christ of Latter-day Saints. We find the comparison inapt.

In *Latter-Day Saints*, we were persuaded that discovery in those actions would focus overwhelmingly on unique, case-specific factual issues given the wide variety of allegations at issue. For example,

> Some plaintiffs allege abuse by Church clergy, others by Church missionaries or teachers, others by fellow Church members, and still others by family members. The alleged perpetrators had different relationships with both plaintiffs and the Church. Further, some plaintiffs allege a single instance of abuse while others allege abuse over the course of years. Many plaintiffs were minors at the time of the alleged abuse, but some were adults

*Latter-Day Saints*, 776 F. Supp. 3d at 1357–58. We contrasted that with the more uniform allegations in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 699 F. Supp. 3d 1396 (J.P.M.L. 2023). There, we centralized litigation involving Uber's allegedly common nationwide policies and procedures regarding sexual abuse and harassment prevention and investigation. Each plaintiff in *Uber* "was a passenger who downloaded the same mobile app, was subject to the same company policies (including, for example, a 'Safe Rider Fee' that allegedly was charged each Uber customer to improve rider safety), and allegedly was assaulted by an Uber driver." *Latter-Day Saints*, 776 F. Supp. 3d at 1358.

Plaintiffs' allegations here are sufficiently uniform that centralized proceedings will promote the just and efficient conduct of litigation. Each plaintiff alleges that someone used an AirTag to stalk them, that Apple designed the AirTag with insufficient safety features to prevent its use for stalking, and that they suffered serious harm because of the stalking. The AirTag's design and whether alternative designs were available will be central questions in each action here, just as Uber's policies and procedures were a core issue in the actions we centralized in *Uber*. And while our decision to centralize *Uber* did not hinge on the plaintiffs' status as Uber customers, at least some of the plaintiffs here are Apple customers. One of the defects alleged relates to how and when iOS device users receive notifications of an AirTag's presence. The complaints also describe how an AirTag's location is transmitted through Apple's crowdsourced Find My network. For those plaintiffs who own an Apple device, it may have been their own Apple device that shared

their location with their stalker.

Apple further argues that centralization is unnecessary because the common discovery has already occurred. Although many of the plaintiffs in the actions on the motion litigated their claims for three years as part of a proposed class action,[3] the discovery focused narrowly on class certification. Apple has not yet made corporate representatives available for depositions, and expert discovery on design defects has not begun. Substantial room for efficiencies remains, making centralization appropriate.

We are also unconvinced that differing state law frameworks will make centralization unmanageable. As we have previously explained, "many MDLs involve the application of various states' laws." *Uber*, 699 F. Supp. 3d at 1399.

Finally, we conclude that informal coordination is not a suitable alternative for these actions. Plaintiffs in most actions on the motion were severed from the proposed class action litigated in the Northern District of California. Apple then moved to transfer those actions away from a centralized structure to district courts across the country. Section 1404(a) transfers to a single district court are therefore not a viable alternative to centralization under Section 1407. While Apple has settled some cases involving the AirTag, settlement activity has slowed or stalled since this motion was filed while more potential tag-along actions have been filed. Plaintiffs note that Apple has received tens of thousands of stalking complaints related to the AirTag, which suggests more actions may follow. It likely will be exceedingly challenging to informally coordinate discovery and briefing schedules as this case count grows.

The Northern District of California is an appropriate transferee district for this litigation. Plaintiffs in most actions on the motion were severed from the proposed class action that proceeded in the Northern District of California for three years. Centralization in the Northern District of California will also facilitate coordination with parallel litigation pending in California state courts. Because Apple is headquartered in the Northern District of California, centralizing this litigation there will aid discovery. We assign the litigation to Judge Noël Wise, a capable jurist who has not yet had the opportunity to serve as a transferee judge. We are confident that she will manage the litigation in a prudent and efficient manner.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of California are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Noël Wise for coordinated or consolidated pretrial proceedings.

---

[3] *Hughes v. Apple, Inc.*, No. 3:22-cv-07668 (N.D. Cal.).

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Matthew F. Kennelly
Dale A. Kimball
Richard Seeborg
David C. Norton
Madeline Cox Arleo

**IN RE: APPLE AIRTAG MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** MDL No. 3199

**SCHEDULE A**

District of Arizona

DOE S.B. 1 v. APPLE INCORPORATED, C.A. No. 2:26−05421

Middle District of Florida

DOE D.C. 1 v. APPLE, INC., C.A. No. 3:26−01974
SCHUELE v. APPLE, INC., C.A. No. 8:26−01955
BALLESTER v. APPLE, INC., C.A. No. 8:26−01956

Northern District of Georgia

CASTLE v. APPLE, INC., C.A. No. 1:26−03851
ALOWONLE v. APPLE, INC., C.A. No. 1:26−03867

District of Maryland

BEIDLEMAN v. APPLE, INC., C.A. No. 8:26−02736

Eastern District of Michigan

DOE−1, ET AL. v. APPLE, INC., C.A. No. 2:26−12764

District of New Jersey

BURKE v. APPLE, INC., C.A. No. 2:26−08495

District of Nevada

DOE v. APPLE, INC., C.A. No. 2:26−02178

Eastern District of New York

HOPKINS v. APPLE, INC., C.A. No. 2:26−04251
DOE v. APPLE, INC., C.A. No. 2:26−04252

Southern District of New York

DOE, N.G. 1 v. APPLE, INC., C.A. No. 7:26−06656

Western District of New York

MORRIS v. APPLE, INC., C.A. No. 6:26−06700

Eastern District of Texas

DOE E.D. 1 v. APPLE INC., C.A. No. 1:26−00340

Western District of Texas

HUGHES v. APPLE, INC., C.A. No. 1:26−01889

Western District of Washington

HUSSEIN v. APPLE, INC., C.A. No. 2:26−02583